**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE MARVIN E. MOYE, *et al.*, | § | |
| | § | |
| Debtors. | § | |
| | § | |
| HARDY RAWLS ENTERPRISES LLC, | § | |
| | § | CIVIL ACTION NO. H-09-2747 |
| Appellant, | § | |
| | § | |
| v. | § | BANKRUPTCY NO. 07-37770 |
| | § | |
| TRUSTEE LOWELL T. CAGE, | § | |
| | § | |
| Appellee. | § | |

**MEMORANDUM AND OPINION**

Hardy Rawls Enterprises, LLC ("HRE") appeals the bankruptcy court's denial of its proof of claim. The bankruptcy court held that HRE had failed to prove that it had a perfected security interest in the debtors' used-car inventory. In this appeal, HRE contends that the bankruptcy court denied it due process when it ruled on the proof of claim without a separate evidentiary hearing. HRE also argues that it is a secured creditor with a perfected security interest.

Based on the briefs, the appellate record, and the applicable law, the bankruptcy court's denial of HRE's proof of claim is affirmed. The reasons for this ruling are explained in detail below.

**I.      Background**

The debtors, Marvin and Joan Moye, sold motor vehicles, on both a wholesale and retail basis, under various names and businesses. (Docket Entry No. 4 at 2). In 1989, the debtors, doing business as JMW Auto Sales, began wholesale selling of used motor vehicles by

purchasing them auction or from car-rental agencies, refurbishing them, then reselling them at auction. (*Id.*). HRE financed the debtors' wholesale floor-plan inventory. (Docket Entry No. 3 at 5; Docket Entry No. 4 at 2). Under the parties' financing agreement, HRE received the purchase price plus a fixed fee per vehicle. (Docket Entry No. 4 at 2). The Trustee alleges that HRE did not secure the agreement by filing UCC liens against the debtors' inventory and that the financing was an oral "handshake deal." (*Id.*).

In April 2002, the debtors began a partnership with another person for retail car sales, opening three used car lots in Houston, Texas. (*Id.*). In 2006, the partnership dissolved. The debtors opened two additional used-car retail sale lots and operated them through late 2007. (*Id.*). The inventory for these lots was financed by HRE and two other entities, Dealer Services Corporation and Automotive Finance Corporation ("AFC"). Both Dealer Services and AFC filed UCC liens against the inventory; HRE did not. (*Id.*).

Customers purchasing vehicles from the debtors could obtain financing in-house. The debtors used a "Motor Vehicle Retail Installment Sales Contract," under which the purchase financing was secured by the used car the customer bought. (*Id.* at 3). "JMW Auto Sales" was the listed lienholder on the certificate of title issued to the customer. HRE retained possession of many of the original titles. (*Id.*).

Starting in August 2003, the debtors began "flipping" the installment contracts to "automobile pool participants" who bought the "paper" for a fixed amount. (*Id.*). "JMW Group Investments, LTD" acted as the seller and Marvin Moye as the guarantor. JMW Group and Moye executed a "Master Purchase and Sale Agreement" under which JMW Group would transfer and deliver a pool of the installment contracts to investors. The purchase price was the amount of the customer's current principal loan balance. (*Id.*). The Trustee alleges that the

2

Master Purchase and Sale Agreements were illegal and unenforceable because, with one exception, none of the investors was licensed to collect money due on the installment contracts. (*Id.* at 3–4). Eventually, more than twenty investors paid more than $9.7 million to the automobile-pool participation program. As of July 2007, the debtors were unable to pay the approximately $340,881 in scheduled monthly payments owing to the pool participants. (*Id.* at 4).

On October 31, 2007, an involuntary chapter 7 bankruptcy petition was filed against JMW Motors. On November 6, 2007, Moye filed a voluntary chapter 7 petition. On November 13, 2007, the bankruptcy court entered an agreed order in JMW's involuntary case and the Trustee was appointed. The Trustee operated the debtors' businesses for limited purposes. On December 3, 2007, the bankruptcy court entered an order for joint administration of the JMW and Moye cases.

HRE filed a proof of claim in the amount of $1,756,012, of which $1,556,012 was identified as secured and $200,000 as unsecured. (Docket Entry No. 2-3 at 1). The proof of claim was filed on Official Form 10. (*Id.*). The Form identified the secured claim as "motor vehicle" and as "Rev-Vehicle Sales." (*Id.*). Attached to the Form was a "Summary of Voluminous Documents" that stated as follows:

> Trustee has possession of approximately 150+ titles reflecting, in princip[al] part, claims of $1,556,012 resulting from "floor plan" loans, on various dates, by creditor on vehicles secured by purchase money security interests and the titles to the vehicles. Additionally, there is an unsecured loan of $200,000 made by creditor to debtors.

(*Id.* at 2). HRE also demanded the return of 158 certificates of title that its prior counsel had turned over to the Trustee. (Docket Entry No. 2-5, Ex. A at 2).

The Trustee filed an objection to HRE's claim.  (Docket Entry Nos. 2-4, 2-5).  The Trustee argued that HRE had "provided no documentation or other substantiation in support of the amounts allegedly due on its claim" and had taken no steps to protect its interest.  (Docket Entry No. 2-5 at 6).  The Trustee also argued that even if HRE was a purchase money lender of the debtors, under § 9.103 of the Texas Business & Commerce Code, the Trustee was a lien creditor with priority over a purchase money security interest holder who did not file a financing statement within twenty days of the debtor receiving the collateral.  (*Id.*).  The Trustee argued that because HRE did not file a financing statement, any purchase money security interest was unperfected.  (*Id.*).  The Trustee argued that possessing certificates of title was insufficient to perfect the purchase money security interest.  (*Id.* at 7).  The Trustee also argued that HRE's interest could not be perfected because there was no security agreement that complied with the statute of frauds.  (*Id.*).  The Trustee attached online filing searches showing that HRE had no UCC filings covering the vehicles.  (*Id.*, Exs. A-1–A-5).

AFC also filed an objection to HRE's proof of claim.  AFC asserted that it had a security agreement and UCC-1 financing statements covering all the vehicles in which HRE claimed an interest.  (Docket Entry No. 2-6 at 4).  AFC also urged the arguments the Trustee advanced.  HRE responded.  (Docket Entry No. 2-7).  In July 2008, AFC asserted the first priority security interest in the 158 certificates of title HRE had given to the Trustee and moved to compel turnover.  (Docket Entry No. 4 at 5).  HRE argued that UCC §§ 9-309 and 9-311 permit perfection under the Texas Certificate of Title Act, Tex. Transp. Code Ann. § 501.001 *et seq.*, without a UCC financing statement.  (Docket Entry No. 2-7 at 5).

The bankruptcy court scheduled a hearing for August 25, 2008.  Five days before the hearing, HRE and other pool participants filed an opposition to AFC's motion to compel,

arguing that HRE had a superior security interest.  (Docket Entry No. 4 at 5).  At the hearing, AFC presented UCC-1 financing statements dated September 2002 covering the debtors' inventory.  AFC also presented evidence that no other party had an earlier financing statement on file.  (*Id.* at 6).  HRE did not dispute that AFC had a security interest.  HRE did argue that it provided the debtors financing to purchase vehicles—"floor planning"—and that HRE kept the certificates of title on the "floor-planned" vehicles until the debtor paid the loan in full.  (*Id.*).

In a "Memorandum of Law Concerning Title and Liens on Vehicles in Texas," the bankruptcy court rejected the legal theories on which HRE claimed a perfected security interest. The court held that the Texas Certificate of Title Act does not recognize possessing title as a means of perfecting a lien and that possession alone was also insufficient under the UCC. (Docket Entry No. 2-17 at 3–4).  The court held that HRE had not complied with the requirements to perfect a purchase money security interest or with the requirements of the Texas Certificate of Title Act or the UCC and therefore lacked a secured interest or a superior lien.  (*Id.* at 5–6).  HRE did not appeal that order.  AFC foreclosed on its security interest.  (Docket Entry No. 2-8 at 6).

In a case-management order entered in October 2008, the bankruptcy court gave the parties an opportunity to brief whether the earlier hearing, the court's memorandum of law, and the order for turnover of the certificates of title precluded relitigation of HRE's assertion of a security interest.  In response, the Trustee moved for judgment on the pleadings, asserting that HRE's security interest was invalid under the law of the case and that this controlled the disposition of the proof of claim.  (Docket Entry No. 2-18).  HRE responded and reurged the legal positions taken in the opposition to the motion for turnover.  (Docket Entry No. 2-19).

In July 2009, the bankruptcy court sustained the objections to HRE's proof of claim.

5

(Docket Entry No. 2-8).   The bankruptcy court described the debtors' used-car dealings as "an elaborate Ponzi scheme."   (*Id.* at 1).   The court recounted the case history and held that as a matter of law, HRE never had a security interest.   (*Id.* at 6).   The court relied on the legal analysis in its prior memorandum and held that the conclusion that HRE did not have a perfected secured interest was the law of the case.   (*Id.*).   The court also held that there was no longer any property of the estate on which HRE could assert a secured claim because all estate property had been sold or foreclosed on.   (*Id.*).   The court restated its earlier finding that there was no documentation attached to the proof of claim to substantiate an unsecured claim.   (*Id.*).   The court noted that it had assumed that there would be no funds to distribute to unsecured creditors and left open equitable reconsideration of unsecured claims if additional estate property remained after disposing of the superior interests.   (*Id.* at 7).

HRE moved for reconsideration and rehearing.   (Docket Entry No. 2-10).   HRE urged that Texas Senate Bill 1592 "clarifies misconceptions by the Courts on the question of security interest succession and makes plain that [HRE] was secured."   (*Id.* at 2).   HRE argued it was entitled to a hearing under Bankruptcy Rules 3007 and 7001 and Local Rule 3007.   (*Id.*).   HRE argued that the detailed checks, schedules, and ledger entries supported its proof of claim.   (*Id.* at 3).   HRE also disputed the court's characterization of the financing as a "Ponzi scheme."   (*Id.* at 9).   The court denied HRE's motion for reconsideration on August 14, 2009.   (Docket Entry No. 2-11).

In this appeal, HRE alleged that the bankruptcy court violated its due process rights by failing to conduct an evidentiary hearing or trial under Bankruptcy Rules 3007 and 7001.   (Docket Entry No. 3 at 6).   HRE again argued that Texas Senate Bill 1592, which was signed in June 2009, "clarifies misconceptions" and "makes plain that [HRE] was secured."   (*Id.* at 4).

HRE maintained that its proof of claim summary complied with the Official Form and that UCC § 9-311 permits a creditor to comply with a state certificate of title act in lieu of filing a UCC financing statement.  (*Id.* at 9, 11).  The Trustee responded that the law of the case supported the bankruptcy court's decision and that no additional or separate evidentiary hearing was needed. (Docket Entry No. 4 at 10–11).  The Trustee also argued that HRE's proof of claim was deficient because HRE did not provide any evidence of a debt.  (*Id.* at 8).  The Trustee maintained that the changes to the Texas Certificate of Title Act were inapplicable and that the only way to perfect a security interest in a vehicle was through a notation on the certificate of title or through a UCC financing statement, and that HRE had neither.  (*Id.* at 11).

Each argument and response is analyzed below.

## II.    The Moyes' Claims

On July 1, 2010, the Moyes, proceeding *pro se*, filed a "Brief of Appellants Marvin E. Moye and Joan M. Moye."  (Docket Entry No. 5).  The Moyes appear to contend that the claims of the creditor that initiated the involuntary bankruptcy were barred and that the bankruptcy court erred in refusing the Moyes a discharge.  The Moyes did not file a notice of appeal in the bankruptcy court or designate the record for appeal.  The Moyes did not designate which order of the bankruptcy court they are appealing from.  No party has filed a response to the Moyes' brief.

The Bankruptcy Rules provide that a party desiring to appeal from a final judgment of a bankruptcy judge to a district court must file a notice of appeal with the clerk of the bankruptcy court within fourteen days of entry of the contested order.   BANKR. R. 8001(a), 8002(a). Additionally, within fourteen days after filing the notice of appeal, "the appellant shall file with the clerk and serve on the appellee a designation of the items to be included in the record on

appeal and a statement of the issues to be presented." BANKR. R. 8006.  Rule 8009(a)(1) of the Bankruptcy Rules requires the appellant to file and serve a brief "within 14 days after entry of the appeal on the docket pursuant to Rule 8007."  Bankruptcy Rule 8001(a) allows the district court to dismiss an appeal if the appellant fails to take any step required under the rules for proper prosecution of an appeal.

The appellate courts have affirmed dismissals of bankruptcy appeals for failure to comply with the rules.  *See Int'l Bhd. of Teamsters v. Braniff Airways, Inc.* (*In re Braniff Airways, Inc.*), 774 F.2d 1303 (5th Cir. 1985) (summary calendar); *see also Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (affirming dismissal of a *pro se* appeal from a bankruptcy court judgment because, without explanation, the plaintiffs failed to designate the record on appeal, file a statement of the issues, or timely file an appellate brief); *Serra Builders, Inc. v. John Hanson Sav. Bank FSB*, (*In re Serra Builders, Inc.*), 970 F.2d 1309, 1311 (4th Cir. 1992) (affirming dismissal of a bankruptcy appeal because the appellant filed its designation of the record on appeal fifteen days late and did not request an extension until after the deadline had passed, noting that the only explanation offered was that the appellant's attorney was out of the country).  The Moyes' purported appeal is dismissed for failure to comply with the federal rules. The remainder of the opinion addresses HRE's appeal.

## III.    The Applicable Legal Standards

A district court reviewing a bankruptcy court's judgment acts as an appellate court. *Webb v. Reserve Life Ins. Co.* (*In re Webb*), 954 F.2d 1102, 1103–04 & n.1 (5th Cir. 1992). Conclusions of law are reviewed de novo.  *In re Argo Fin., Inc.*, 337 F.3d 516, 522 (5th Cir. 2003); *Killebrew v. Brewer* (*In re Killebrew*), 888 F.2d 1516, 1519 (5th Cir. 1989) (summary calendar).  A finding of fact may be disregarded only if it is clearly erroneous. *In re Barron*, 325

8

F.3d 690, 692 (5th Cir. 2003).  "A finding is clearly erroneous if it is without substantial evidence to support it, the court misinterpreted the effect of the evidence, or th[e] court is convinced that the findings are against the preponderance of credible testimony."  *Bd. of Trs. New Orleans Employers Int'l Longshoremen's Ass'n, AFL-CIO Pension Fund v. Gabriel, Roeder, Smith & Co.*, 529 F.3d 506, 509 (5th Cir. 2008).

In reviewing findings of fact, the district court must not weigh the evidence anew but rather determines whether the evidence supports the bankruptcy court's findings and sets them aside only if there is a "definite and firm conviction that a mistake has been committed."  *In re Dennis*, 330 F.3d 696, 701 (5th Cir. 2003); *see also In re Perry*, 345 F.3d 303, 308–09 (5th Cir. 2003); *In re Williams*, 337 F.3d 504, 508 (5th Cir. 2003).  If the bankruptcy court's finding is plausible in light of the record viewed as a whole, the district court should not reverse even if it would have weighed the evidence differently.  *See Bertucci Contracting Corp. v. M/V Antwerpen*, 465 F.3d 254, 258 (5th Cir. 2006).  "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."  *Id.* (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985)).  The bankruptcy judge's opportunity to make first-hand credibility determinations entitles its assessment of witness testimony to particular deference.  *See id.* at 259; *see also FirstBank v. Pope*, 141 B.R. 115, 118 (E.D. Tex.), *aff'd*, 979 F.2d 1534 (5th Cir. 1992).

## IV.    Analysis

HRE's grounds for appeal fall into two categories: (1) whether the bankruptcy court followed the Federal Rules of Bankruptcy Procedure, and if not, whether HRE was denied due process; and (2) whether the bankruptcy court properly denied HRE's proof of claim.  (Docket Entry No. 2-2).

### A.     The Claim that the Bankruptcy Court Violated the Rules and Denied HRE Due Process

HRE argues that Bankruptcy Rules 3007 and 7001, and Local Rule 3007 "make it clear that the objection at issue should have been treated as an adversary case with a full trial of issues."  (Docket Entry No. 3 at 6).  HRE argues that the bankruptcy court's rulings, in the absence of such a "trial," violated the Bankruptcy Rules and due process.  (*Id.*).  The Trustee argues that the bankruptcy court properly applied the rule of the case doctrine to bar HRE's proof of claim.

Bankruptcy Rule 3007 states: "An objection to the allowance of a claim shall be in writing and filed.  A copy of the objection with notice of the hearing thereon shall be mailed or otherwise delivered to the claimant, the debtor or debtor in possession, and the trustee at least 30 days prior to the hearing."  BANKR. R. 3007(a).  The Rule also states: "A party in interest shall not include a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim, but may include the objection in an adversary proceeding."  BANKR. R. 3007(b).[1]  The Rule was amended effective December 1, 2007.  The Committee Note to the 2007 amendments stated as follows:

> . . . First, the amendment prohibits a party in interest from including in a claim objection a request for relief that requires an adversary proceeding.  A party in interest may, however, include an objection to the allowance of a claim in an adversary proceeding.  Unlike a contested matter, an adversary proceeding requires the service of a summons and complaint, which puts the defendant on notice of the potential for an affirmative recovery.  Permitting the plaintiff in the adversary proceeding to include an objection to a claim would not unfairly surprise the defendant as might be the case if the action were brought as a contested matter

---

[1]  Rule 3007 was substantially amended effective December 1, 2007.  The parties do not dispute that the amended version of the rules applied to this bankruptcy proceeding.

that included an action to obtain relief of a kind specified in Rule 7001.

The rule as amended does not require that a party include an objection to the allowance of a claim in an adversary proceeding. If a claim objection is filed separately from a related adversary proceeding, the court may consolidate the objection with the adversary proceeding under Rule 7042.

Local Rule 3007-1 provides that an objection must include a scheduling conference hearing date and that the objecting party must serve the objection on the claimant, the claimant's counsel, the debtor, the debtor's counsel, and the Trustee at least 30 days before the hearing date. BLR 3007-1(b)–(d).  The local rule also states that if a defense is raised to the objection, an evidentiary hearing will be scheduled at the initial hearing unless the parties consent to proceed at the initial hearing.  BLR 3007-1(e).  Bankruptcy Rule 7001 includes in adversary proceedings "a proceeding to determine the validity, priority, or extent of a lien or other interest in property, other than a proceeding under Rule 4003(d)."[2] BANKR. R. 7001(2).

It is unclear whether "an adversary complaint must be filed to commence an adversary proceeding or whether a claims objection automatically morphs into an adversary proceeding by virtue of Bankruptcy Rule 3007."  *In re Eads*, 417 B.R. 728, 740 (Bankr. E.D. Tex. 2009); *see also In re Donson*, No. 09-38023, 2010 WL 2640193, at *3 (Bankr. S.D. Tex. June 28, 2010) (overruling an objection to claims when the creditor disputed dischargeability; the court held that the claim could only be brought as an adversary proceeding and overruled it but allowed the creditor to reopen the adversary case).  If there is an action challenging the validity, priority, or extent of a lien under Rule 7001, the creditor is entitled to the procedural safeguards set forth in

---

[2]   Rule 4003(d), which deals with proceedings to avoid liens or transfers of property that is exempt, is not applicable here.

Bankruptcy Rules 7001–7071.  *Eads*, 417 B.R. at 740.  But even if the Trustee's objection to the proof of claim should have been treated procedurally as an "adversary proceeding" instead of a "contested matter," HRE does not explain why the bankruptcy court's hearing on AFC's lien priority was not a "full trial of issues" for the issues that control HRE's proof of claim, in compliance with the procedural safeguards set forth in the Rules.  *See In re Good*, 428 B.R. 235, 243 (Bankr. E.D. Tex. 2010) (holding that when the creditor appeared before the court in a contested matter and vigorously defended its claim, an objection to the claim did not need to be converted to an adversary proceeding); *cf. Eads*, 417 B.R. at 740 (holding that a creditor received insufficient notice).

The bankruptcy court concluded that HRE's claim was unsecured and that AFC had priority as a matter of law following the full hearing on AFC's motion to compel.  HRE does not claim that it received insufficient notice.  HRE does not allege that it was denied due process during that hearing.  Nor does HRE point to any additional evidence that would, or could, have been presented at another full hearing on these same issues.[3]  HRE does not explain why the bankruptcy court improperly applied the law of the case doctrine from its conclusions in the "Memorandum of Law Concerning Title and Liens on Vehicles in Texas" to HRE's proof of claim.  Any violation of the rules in failing to treat the claim as an "adversary proceeding" was both inconsequential and harmless in light of the bankruptcy court's full consideration of HRE's evidence and arguments during the prior hearing.

For the same reasons, the record shows no due process violation.  The requirements of

---

[3] HRE states later in its brief, in arguing why the summary attached to the Official Form was sufficient, that it would have explained the checks, schedules, and ledger entries in four exhibits through testimony.  HRE does not explain why that testimony was not presented at the hearing on AFC's claims, which necessitated a determination of HRE's secured status, the controlling issue in the proof of claim.

due process are "flexible and call[ ] for such procedural protections as the particular situation demands," but the "fundamentals of due process" are notice, an opportunity to be heard, and an appeal. *Zhang v. Gonzales*, 432 F.3d 339, 346 (5th Cir. 2005) (alteration in original) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) and *Harper v. Lindsay*, 616 F.2d 849, 858 (5th Cir.1980)); *see also Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("[W]e have determined that individuals whose property interests are at stake are entitled to 'notice and an opportunity to be heard.'" (quoting *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993)). HRE does not claim insufficient notice of the hearing on AFC's priority or of the need to prove its own secured status at that hearing. HRE had a full opportunity to be heard on all issues.

This case is similar to *In re Bartle*, 560 F.3d 724 (7th Cir. 2009). In *Bartle*, the debtor owed the United States millions in unpaid taxes. Once it became clear to the United States that the debtor would be unable to reorganize under chapter 11, the United States moved to dismiss the chapter 11 proceeding under 11 U.S.C. § 1112(b). *Id.* at 726–27. The court granted the motion ten days later, without a written response to the motion or a hearing. *Id.* at 727. The debtor moved to alter or amend the order granting the motion to dismiss, alleging that "the court had improperly granted the motion without conducting a hearing as envisioned by section 1112(b)(2)." *Id.* The court denied the motion without comment. The debtor appealed, alleging a violation of the rules and of his due process rights. *Id.* at 728. Like the provisions at issue in this case, § 1102 stated that a court could convert the case to a chapter 7 proceeding "after notice and a hearing." *Id.* The Seventh Circuit held that this section "envision[s]" a hearing but that "parties are entitled to an opportunity to be heard, not to a particular type of hearing." *Id.* at 729. The court assumed that, at a minimum, the debtor was denied an adequate opportunity to

13

respond.  *Id.*  But the court held that the error was only reversible if it was not harmless, that is, if it affected the debtor's substantial rights.  *See id.* at 730 (analyzing Bankruptcy Rule 9005 and Rule 61 of the Federal Rules of Civil Procedure, which instructs the courts to disregard errors not affecting substantial rights).  The court held that the debtor's substantial rights would have been affected "only if he had a response to the government's motion that might have altered the court's decision."  *Id.*  The court conclude that it "cannot say that [the debtor's] substantial rights were affected by an erroneous deprivation of an opportunity to be heard on the government's motion to dismiss when he [did] not set forth what he would have brought to the court's attention in opposition to that motion."  *Id.*  The court affirmed the dismissal.  *Id.* at 731.  In the present case, as in *Bartle*, HRE has not shown what evidence it was unable to present to the bankruptcy court or how that evidence would have affected the analysis of its proof of claim.

To the extent HRE argues that the bankruptcy court erred in applying law of the case to its proof of claim, that argument is also without merit.  "As most commonly defined, the doctrine [of the law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."  *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–16 (1988) (alteration in original) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983) (dictum)).  The doctrine applies to those issues "decided by necessary implication as well as those decided explicitly."  *Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*, 3 F.3d 877, 880–81 (5th Cir. 1993) (quoting *Dickinson v. Auto Ctr. Mfg. Co.*, 733 F.2d 1092, 1098 (5th Cir. 1983)).  "This rule of practice promotes the finality and efficiency of the judicial process by "'protecting against the agitation of settled issues.'"  *Christianson*, 486 U.S. at 816 (quoting 1B J. MOORE, J. LUCAS, & T. CURRIER, MOORE'S FEDERAL PRACTICE ¶ 0.404[1], p. 118 (1984)).  Although the doctrine does not limit a court's power to reconsider

14

prior rulings, "as a rule courts should be loathe to do so in the absence of extraordinary circumstances." *Id.*   Such circumstances include new evidence, intervening controlling authority, or a clearly erroneous decision that would work a manifest injustice. *White v. Murtha*, 377 F.2d 428, 432 (5th Cir. 1967).   HRE has not shown that it would have presented the bankruptcy court with additional evidence; that there was an intervening change in authority that the bankruptcy court should have considered; or that the bankruptcy court's decision was clearly erroneous or worked a manifest injustice.   The bankruptcy court did not err in applying the law of the case doctrine to its earlier decision that HRE was not secured.   The merits of that decision are addressed below.

### B.       HRE's Proof of Claim

#### i.       Compliance with Bankruptcy Rule 3001 and Official Form 10

The Trustee argues that HRE failed to conform to Official Form B-10, to satisfy the requirements of Rule 3001, or to provide evidence that it was a secured creditor.   (Docket Entry No. 4 at 8).   HRE responds that it attached 75 pages of "detailed checks, schedules and ledger entries in four exhibits" to its response to the objections and that the more than 150 titles supporting its proof of claim were not available to HRE because the Trustee had taken possession.   (Docket Entry No. 3 at 11).

Rule 3001 states: "A proof of claim is a written statement setting forth a creditor's claim. A proof of claim shall conform substantially to the appropriate Official Form."   BANKR. R. 3001(a).   The Rule also requires: "When a claim, or an interest in property of the debtor securing the claim, is based on a writing, the original or a duplicate shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim."   BANKR. R. 3001(c).   "If a security interest in property

of the debtor is claimed, the proof of claim shall be accompanied by evidence that the security interest has been perfected."  BANKR. R. 3001(d).

HRE used "B 10 (Official Form 10)" to file its proof of claim.  (Docket Entry No. 2-3). The Form requires information, such as the name of the debtor and case, the name of the creditor, the basis for the claim, classification of the claim (and whether it is secured or unsecured and the amount of each), and a total amount.   The Form requires supporting documentation, stating:

> *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien.  DO NOT SEND ORIGINAL DOCUMENTS.  If the documents are not available, explain.  If the documents are voluminous, attach a summary.

(Docket Entry No. 2-3).  HRE completed most of the Form but left blank the date the debt was incurred.   The only document HRE attached to Form 10 was a "Summary of Voluminous Documents" that stated:

> Trustee has possession of approximately 150+ titles reflecting, in principle [sic] part, claims of $1,556,012 resulting from "floor plan" loans, on various dates, by creditor on vehicles secured by purchase money security interests and the titles to the vehicles.  Additionally, there is an unsecured loan of $200,000 made by creditor to debtors.

(*Id.*).

It is unclear from the language of Form 10 whether voluminous documents should be attached with a summary or whether a summary should be attached in lieu of the documents. HRE chose the latter approach.  But HRE's summary is plainly inadequate.  It did not explain what documents, other than the certificates of title, were evidence of the amount of security interest or the amount of the unsecured loan, or whether such documents existed at all.  HRE did

16

not substantially comply with Form 10.

Grounds on which to deny a proof of claim are provided in 11 U.S.C. § 502(b).  A failure to attach supporting documentation to a proof of claim as instructed in the Bankruptcy Rules does not require disallowing the claim.  *See, e.g.*, *In re Dove-Nation*, 318 B.R. 147, 152 (8th Cir. BAP 2004); *In re Gilbreath*, 395 B.R. 356, 364 (Bankr. S.D. Tex. 2008).  But a proof of claim lacking necessary facts or supporting documents is not entitled to a presumption of *prima facie* validity.  *Kincaid*, 388 B.R. 610, 614 (Bankr. E.D. Penn. 2008); *Dove-Nation*, 318 B.R. at 152; *Gilbreath*, 395 B.R. at 364.  If the debtor objects to a proof of claim, the claim's validity becomes a "contested matter" and the burden shifts back to the creditor to prove the claim is valid by a preponderance of the evidence.  *See* 11 U.S.C. § 502; *In re O'Connor*, 153 F.3d 258, 260–61 (5th Cir. 1998); *In re Fid. Holding Co.*, 837 F.2d 696, 698 (5th Cir. 1988) (summary calendar); *Gilbreath*, 395 B.R. at 364.  The creditor can meet this burden by amending its incomplete proof of claim or by introducing evidence at a hearing to prove the lien.  *In re Anderson*, 330 B.R. 180, 185 (Bankr. S.D. Tex. 2005).

The bankruptcy court did not reject HRE's assertion of a secured claim on the basis of noncompliance with Form 10.  The court rejected the asserted secured claim for the reasons set out in its "Memorandum of Law Concerning Title and Liens on Vehicles in Texas," which ruled on the merits of HRE's proof of  claim.  (Docket Entry No. 2-8 at 6, citing Bankruptcy Docket Entry No. 212).  Nor did the bankruptcy court enter a final judgment disallowing HRE's asserted unsecured claim; rather, the court ruled that it was disallowed because there would be no estate funds remaining for unsecured claims.  The court specifically reserved equitable reconsideration of HRE's unsecured claim if the assets proved greater than expected.  (*Id.* at 7).   There is no error in the bankruptcy court's rulings on compliance with Bankruptcy Rule 3001 and Official

Form 10.

###             ii.        Whether HRE's Claims Were Perfected

The bankruptcy court concluded that HRE did not have a perfected security interest and directed the Trustee to deliver the vehicle titles to AFC.  (Docket Entry No. 2-17 at 1).  The bankruptcy court first concluded that the law applicable to a manufacturer's certificate under the Texas Certificate of Title Act, Texas Transportation Code § 501.002(15), was inapplicable because all the vehicles in question were previously titled and had previously been issued certificates of title.  (*Id.* at 1–2).  HRE does not appeal that portion of the decision.

The bankruptcy court then held that the Certificate of Title Act, Texas Transportation Code § 501.111, does not authorize perfecting a lien in a vehicle by possession of the certificate of title alone.  (*Id.* at 3).  The court also held that the UCC does not authorize perfecting a lien in a vehicle by possession of a certificate of title when the motor vehicles are inventory.  (*Id.* at 4). Finally, the court held that HRE failed to comply with the requirements for perfecting a purchase-money security interest in goods.  (*Id.*).   HRE does not challenge the bankruptcy court's ruling on the inapplicability of the manufacturer's lien or the failure to perfect as a purchase-money security interest in goods.  The core of the appeal is HRE's contention that the UCC permits perfection of the security interest by complying with the local certificate of title act and that the Texas Certificate of Title Act permits possession of a certificate of title without filing a lien.  (Docket Entry No. 3 at 9).

Texas Transportation Code § 501.111 provides:

> (a) Except as provided by Subsection (b), a person may perfect a security interest in a motor vehicle that is the subject of a first or subsequent sale only by recording the security interest on the certificate of title as provided by this chapter.

18

> (b) A person may perfect a security interest in a motor vehicle held
> as inventory by a person in the business of selling motor vehicles
> only by complying with Chapter 9, Business & Commerce Code.

TEX. TRANSP. CODE ANN. § 501.111.  HRE does not allege that it recorded its security interest

on the certificate of title.  HRE could only perfect a security interest in a motor vehicle "by

complying with Chapter 9, Business & Commerce Code."

Chapter 9 of the Business and Commerce Code is the Texas version of the Uniform

Commercial Code.  HRE cites UCC 9-311, UCC 9-313(b), and UCC 9-316(d) to support its

proposition that possession perfects a security interest without filing.

Section 9.311 of the Texas Business and Commerce Code provides that filing a financing

statement is not necessary when, among other things, the property is subject to Chapter 501 of

the Transportation Code.  TEX. BUS. & COM. CODE ANN. § 9.311(a)(2).  Chapter 501 controls

perfection of a security interest in motor vehicles.  Section 9.311 provides that "[c]ompliance

with the requirements of a statue, regulation, or treaty described in Subsection (a) for obtaining

priority over the rights of a lien creditor is equivalent to the filing of a financing statement under

this Chapter."  *Id.* § 9.311(b).  Section 9.311 also states that "[d]uring any period in which

collateral subject to a statute specified in Subsection (a)(2) is inventory held for sale or lease by a

person or leased by that person as lessor and that person is in the business of selling goods of

that kind, this section does not apply to a security interest in that collateral created by that

person."  *Id.* § 9.311(d).

HRE cites the official comments to § 9.317(e), the provision applicable to filing a

financing statement for a purchase-money security interest within 20 days of the debtor receiving

the collateral.  The comments state:

> Section 9-311(b) provides that compliance with the perfection

19

> requirements of a statute or treaty described in Section 9-311(a) "is equivalent to the filing of a financing statement."  It follows that a person who perfects a security interest in goods covered by a certificate of title by complying with the perfection requirements of an applicable certificate-of-title statute "files a financing statement" within the meaning of subsection(e).

The comments make clear that a purchase-money security interest can be perfected by complying with the Texas Certificate of Title Act within 20 days of the debtor receiving the collateral.  But HRE fails to take into account the comments to § 9-311, which state as follows:

> **Inventory Covered by Certificate of Title.**  Under subsection (d), perfection of a security interest in the inventory of a person in the business of selling goods of that kind is governed by the normal perfection rules, *even if the inventory is subject to a certificate-of-title statute*.  Compliance with a certificate-of-title statute is both unnecessary and ineffective to perfect a security interest in inventory to which this subsection applies. Thus, a *secured party who finances an automobile dealer* that is in the business of selling and leasing its inventory of automobiles can *perfect a security interest in all the automobiles by filing a financing statement but not by compliance with a certificate-of-title statute*.

*Id.* § 9.311 cmt. 4 (emphasis added).

The most generous reading of the UCC and Certificate of Title Act permits a person to perfect a secured interest in a motor vehicle in Texas either by noting the security interest on the certificate of title or by filing a financing statement.  Neither the UCC nor the Texas Certificate of Title Act contemplate mere possession of an unmarked certificate of title as adequate to perfect a security interest in that vehicle.  *See In re Dota*, 288 B.R. 448, 459 (S.D. Tex. 2003) ("[N]either the [Texas Business & Commerce] Code nor the COTA [Certificate of Title Act] recognizes retention of certificates of title as a valid means for perfecting or protecting a security interest in motor vehicles held as inventory."); *id.* ("Chapter 9 of the Code provides that a security interest in inventory can be perfected only by filing a financing statement at the

Secretary of State's Office (citing TEX. BUS. & COM. CODE § 9.302(a),(c)).

Most of the cases HRE cites are not relevant.[4]  One requires a brief discussion.  In *Southwestern Investment Co. v. American National Bank of Amarillo*, 374 S.W.2d 318 (Tex. Civ. App.—Amarillo 1963, writ ref'd n.r.e.), the court considered the superiority of liens between the investment company that financed a dealer's inventory and a bank that later financed the same cars.  *Id.* at 320.  The investment company registered the floor-planning agreement under the Trust Receipts Act and the bank took possession of the unencumbered certificates of title.  The court held that although the original lender had registered the agreements under the Trust Receipts Act, the second lender had the superior lien.  The court noted: "It has been held that a lender of money for the purchase of an automobile may protect himself by retaining the title papers in his possession or by causing a lien to be noted upon the papers."  *Id.* at 322.  This case, decided in 1964, did not consider the interplay of the modern Certificate of Title Act and the

---

[4]  Most of the cases cited involve retail purchasers who did not obtain title from the sellers.  *See Drake Ins. Co. v. King*, 606 S.W.2d 812 (Tex. 1980) (subsequent sales of a stolen vehicle when title remained in the original owner); *Guinn v. Lokey*, 249 S.W.2d 185 (Tex. 1952) (holding that a buyer was not a bona fide purchaser when he failed to obtain receipt or certificate of title from a non-dealer seller); *One Ford Mustang v. State*, 231 S.W.3d 445, 453–54 (Tex. App.—Waco 2007, no pet.) (holding that a non-dealer owner who had a sales contract stating that title would not be delivered until the buyer paid for the car in full was the legal owner of the car); *Arcadia Fin., Ltd. v. Sw.-Tex. Leasing Co.*, 78 S.W.3d 619 (Tex. App.—Austin 2002, pet. denied) (holding the party that financed the car dealer's customers' purchases was not a buyer in the ordinary course when the sale of the car from the wholesaler was not complete due to lack of payment and transfer of title); *Everett v. U.S. Fire Ins. Co.*, 653 S.W.2d 948, 950 (Tex. App—Fort Worth 1983, no writ) "([A] purchaser from the merchant to whom the vehicle is entrusted without a proper transfer of the Certificate gets no better title than if he had purchased from the owner without a proper transfer of the Certificate."); *Pfluger v. Colquitt*, 620 S.W.2d 739 (Tex. Civ. App.—Dallas 1981, writ ref'd n.r.e.) (buyer in the ordinary course who purchased from agent of the title holder was entitled to the certificates of title); *Boswell v. Connell*, 556 S.W.2d 624 (Tex. App.—Beaumont 1977, writ ref'd n.r.e.) (holding the purchaser was not a buyer in the ordinary course when the seller did not have and could not transfer title); *Assocs. Inv. Co. v. Galloway*, 403 S.W.2d 542 (Tex. Civ. App—Amarillo 1966, no writ) (the first mortgage holder was noted as lienholder on the certificate of title issued to the buyer and retained possession of the certificates; the court held that a subsequent mortgagor could not enforce an unrecorded lien).  HRE has not alleged that it ever owned the motor vehicles.  One case is distinguishable because the financier perfected  by filing in addition to retaining certificates of title.  *See Bank One Tex. N.A. v. Arcadia Fin. Ltd.*, 219 F.3d 494 (5th Cir. 2000) (floor plan financier filed a UCC-1 financing statement to cover inventory).

Texas version of the Uniform Commercial Code.  For the reasons discussed above, the plain language of those provisions does not support HRE's contention that perfection of a security interest can be by possession of an unmarked certificate of title alone.

HRE also relies on § 9.313(b) and § 9.316(d), but they do not affect the analysis.  Section 313(b) provides:

> With respect to goods covered by a certificate of title issued by this state, a secured party may perfect a security interest in the goods by taking possession of the goods only in the circumstances described in Section 9.316(d).

TEX. BUS. & COM. CODE § 9.313(b).  The comments to that section describe the purpose of § 9.313(b):

> Subsection (b) is necessary to effect changes to the choice-of-law rules governing goods covered by a certificate of title. These changes are described in the Comments to Section 9-311. Subsection (b), like subsection (a), does not create a right to take possession. Rather, it indicates the circumstances under which the secured party's taking possession of goods covered by a certificate of title is effective to perfect a security interest in the goods: the goods become covered by a certificate of title issued by this State at a time when the security interest is perfected by any method under the law of another jurisdiction.

Id. cmt. 7.  Section 9.316(d) provides:

> Except as otherwise provided in Subsection (e), a security interest in goods covered by a certificate of title that is perfected by any method under the law of another jurisdiction when the goods become covered by a certificate of title from this state remains perfected until the security interest would have become unperfected under the law of the other jurisdiction had the goods not become so covered.

Section 9.316 deals entirely with continued perfection of security interests that were perfected under the laws of another jurisdiction.  HRE has not alleged that it perfected any interest in the motor vehicles in another jurisdiction.  Sections 9.313(b) and 9.316(d) do not apply.

Finally, HRE discusses at length recent amendments to Texas Transportation Code § 501.114. (Docket Entry No. 3 at 7–9). That section of the Transportation Code deals with assignment of liens. As amended, the statute provides:

> A lienholder may assign a lien recorded under Section 501.113 without making any filing or giving any notice under this chapter. The lien assigned remains valid and perfected and retains its priority, securing the obligation assigned to the assignee, against transferees from and creditors of the debtor, including lien creditors, as defined by Section 9.102, Business & Commerce Code.

TEX. BUS. & COM. CODE ANN. § 501.114(a). Section 501.113 provides that a lien is recorded when the county assessor-collector "is presented with an application for a certificate of title that discloses the lien with tender of the filing fee" or "accepts the application." TEX. TRANSP. CODE ANN. § 501.113(a).

HRE has not shown that § 501.114(a), whether amended or not, applies. Section 501.114 contemplates that a "lien assigned *remains* valid and perfected and retains its priority." TEX. BUS. & COM. CODE ANN. § 501.114(a) (emphasis added). A lien must first be valid and perfected for § 501.114(a) to apply. The statute enacting the amendments to § 501.114(a) notes that "[t]his Act is intended to clarify that under existing law, an *assignment of a recorded security interest* may be recorded on the title, but does not have to be recorded on the title to retain the validity, perfection, and priority of the security interest securing the obligation assigned to the assignee." *Id.* § 501.114 (historical and statutory notes). HRE has provided this court with no evidence that the security interests it claims were ever perfected by recordation on the title. Section 501.114 is not applicable.

In summary, HRE has not shown that it was a secured, perfected creditor under the Texas Transportation Code or the Texas Uniform Commercial Code. The bankruptcy court properly

sustained the Trustee's objection to HRE's proof of claim.  The judgment of the bankruptcy court is affirmed.

**V.      Conclusion**

The bankruptcy court's denial of HRE's proof of claim is affirmed.

SIGNED on August 17, 2010, at Houston, Texas.

Lee H. Rosenthal
United States District Judge